23 F.3d 878
 UNITED STATES of America, Plaintiff-Appellee,
v.
Janice McMANUS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alton Ray TRUESDALE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tennison Alexander HARRIS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alvin TRUESDALE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Connell ROBINSON, III, Defendant-Appellant.
 Nos. 92-5876, 92-5881, 92-5882, 93-5177 and 93-5215.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 1, 1993.
Decided May 6, 1994.
 
 ARGUED: Jesse J. Waldon, Jr., Waldon & Dominguez, Charlotte, NC; Scott E. Lawrence, Scott E. Lawrence Atty. at Law, Cornelius, NC; Marshall A. Swann, Charlotte, NC; Janet C. Thomas, Charlotte, NC, for appellants. Kenneth Davis Bell, Asst. U.S. Atty., Charlotte, NC, for appellee. ON BRIEF: Thomas Rochman, Cleveland, OH, for appellant Alvin Truesdale. Jerry W. Miller, U.S. Atty., Charlotte, NC, for appellee.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 Affirmed as to Janice McManus, Tennison Harris, and Alton Truesdale; convictions affirmed but remanded for resentencing as to Connell Robinson; convictions affirmed except remanded with instructions to vacate Sec. 846 conspiracy conviction and to resentence as to Alvin Truesdale by published opinion. Senior Judge SPROUSE wrote the opinion, in which Chief Judge ERVIN and Judge PHILLIPS joined.
 OPINION
 SPROUSE, Senior Circuit Judge:
 
 
 1
 Janice McManus, Alton Truesdale, Tennison Harris, Alvin Truesdale, and Connell Robinson were convicted of participation in a cocaine conspiracy, in violation of 21 U.S.C. Sec. 846. The ringleader, Alvin Truesdale, was also convicted of maintaining a continuing criminal enterprise (CCE), in violation of 21 U.S.C. Sec. 848, and several other federal offenses. All five defendants appeal the severance of their trials and the district court's sentencing determinations. In addition, Alvin Truesdale challenges the sufficiency of the evidence for his conviction of a weapons charge. He also appeals his conviction of two separate weapons violations under 18 U.S.C. Sec. 924(c), contending that he can only be convicted of one firearms count where there was a single conspiracy. Finally, he appeals his conspiracy conviction because that conspiracy was a predicate offense underlying his CCE conviction. We affirm the district court's judgment on all issues, except we remand to the district court with instructions to vacate Alvin Truesdale's conspiracy conviction, and we remand Alvin Truesdale's and Connell Robinson's sentencing determinations for more specific resolutions of the issues presented by the defendants' objections to their presentence reports.
 
 
 2
 * On February 6, 1992, the grand jury for the United States District Court for the Western District of North Carolina returned a thirty count indictment against twenty-one individuals, charging nineteen of them with participation in a conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 846. The ringleader, Alvin Truesdale, was also charged with maintaining a CCE in violation of 21 U.S.C. Sec. 848 and several other federal crimes.
 
 
 3
 At calendar call on July 20, 1992, the district court announced its intention to separate the cases of the eleven defendants then remaining for trial into two groups and to hold separate trials for each group, due to the logistical difficulties of trying a large number of defendants at once.[1] The district court denied Alvin Truesdale's objection to this decision.
 
 
 4
 At trial, persuasive evidence showed that Alvin Truesdale ran a large drug operation in Charlotte, North Carolina, involving several drug houses and links with drug suppliers in Florida and New York and that each of the appellants here played some role in the conspiracy. The chief witness for the prosecution was James Scales, a friend of Alvin Truesdale, who had been involved in many of the drug operations. Trial testimony revealed that Alvin Truesdale had originally operated his illicit drug business in 1987 out of a parking lot in Charlotte. Through his association with Scales, Truesdale developed primary sources for large quantities of cocaine in Florida. After Truesdale established these contacts, Scales would drive to Florida every other week and pick up an average of two to three kilograms of cocaine for Truesdale. Generally, Scales received reimbursement for his cocaine purchases at the home of Janice McManus, Truesdale's girlfriend. McManus was often at her house when the cocaine was delivered and would allow it to be stored there.
 
 
 5
 Shortly after he began his enterprise, Truesdale opened another drug house called the "Money Pit" and established a group of workers there. He recruited a drug dealer, Rod "Big Daddy" Williams, and other low-level distributors who worked for Williams. Soon thereafter, Williams and his former employer engaged in a gun fight as a result of Williams' defection to Truesdale, and Williams shot his former drug boss with a 9mm Uzi furnished by Truesdale. Truesdale rapidly expanded his operation to include drug houses on Allen Street, in the Westwood Apartments, on Merriman Avenue, on Mayfair Avenue, in Griertown, and in a club called the "Nite Life," while maintaining his original two locations. Operators from each location were responsible for taking the proceeds of the drug sales to Truesdale at his nightclub, "The Jaguar Club."
 
 
 6
 In late 1989 Truesdale attempted to expand further, putting together several operations designed to secure large purchases of cocaine or cocaine base. These efforts were unsuccessful, and Truesdale was "ripped off" at least three times during that period, resulting in his loss of several hundreds of thousands of dollars. In retaliation, Truesdale sent Scales and two of his other employees to Florida with orders to blow up the homes of the mothers of his duplicitous sources of supply. On the way to Florida, however, Scales and the others were arrested, and the bombings never occurred.
 
 
 7
 Appellant Tennison Harris was employed by Truesdale throughout the conspiracy. He always carried weapons, and he had served as an enforcer since the beginning of the operation. Alton Truesdale, Alvin's uncle, was responsible for operating the Money Pit, in addition to making trips to Florida to obtain kilograms of cocaine. Connell Robinson was an employee of Truesdale, recruited by Rod Williams. He was responsible for overseeing drug sales at the Westwood Apartment location, the "Gate House" on Mayfair Avenue, and the Money Pit. Robinson paid other, lower-level employees of Truesdale for their drug sales and carried a 9mm Uzi.
 
 
 8
 Alvin Truesdale was convicted of the twenty-two charges against him remaining at the time of trial. Janice McManus, Alton Truesdale, and Tennison Harris were convicted on the conspiracy charge. In his separate trial, Connell Robinson was convicted on the conspiracy charge and a charge of possession with intent to distribute cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). The district court, applying the United States Sentencing Guidelines, sentenced Alvin Truesdale to life imprisonment plus twenty-five years. Alton Truesdale received a sentence of 216 months; McManus a sentence of 144 months; Harris a sentence of 396 months; and Robinson a sentence of 168 months.
 
 
 9
 All defendants appeal their sentences, charging the district court with failure to make an independent resolution of factual issues in sentencing (the amount of cocaine attributable to each defendant). They also challenge the severance of the trials. In addition, Alvin Truesdale challenges the sufficiency of the evidence for his conviction of a weapons charge under 18 U.S.C. Sec. 924(c)(1) and (2), the district court's sentencing procedures under Federal Rule of Criminal Procedure 32, his conviction of both conspiracy and running a continuing criminal enterprise, his conviction for two separate Sec. 924(c) violations, and the calculation of his criminal history score.
 
 
 10
 Because Alvin Truesdale objected to the district court's severance of the defendants' trials, we review his severance claim under an abuse of discretion standard. United States v. Casamento, 887 F.2d 1141, 1149 (2d Cir.1989), cert. denied, 493 U.S. 1081, 110 S.Ct. 1138, 107 L.Ed.2d 1043 (1990). The claims of the other four defendants are reviewed under a plain error standard.[2] United States v. Olano, --- U.S. ----, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); Fed.R.Crim.P. 52(b). The attacks on the district court's quantity of drugs determination is considered under the clearly erroneous standard, United States v. Adams, 988 F.2d 493, 495 (4th Cir.1993), as are the claims concerning the district court's application of Federal Rule of Criminal Procedure 32, United States v. Eschweiler, 782 F.2d 1385 (7th Cir.1986), and the calculation of Alvin Truesdale's criminal history score. United States v. Hicks, 948 F.2d 877, 881 (4th Cir.1991). Evidence challenged as insufficient is reviewed "in the light most favorable to the government." United States v. Cummings, 937 F.2d 941, 943 (4th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 395, 116 L.Ed.2d 345 (1991). Finally, we review the district court's conclusions of law de novo. United States v. Williams, 977 F.2d 866, 869 (4th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 1342, 122 L.Ed.2d 725 (1993).
 
 II
 
 11
 To reiterate, at calendar call on July 20, 1992, the district court announced that it was separating the eleven defendants into two trials, due to the logistical difficulties involved with trying so many individuals simultaneously. The government, responding to a court inquiry, opted to first prosecute the two Truesdales, Harris, and McManus. Robinson and another defendant, not involved here, were to be tried later.[3] At the time, Alvin Truesdale objected to being placed in the first group to be tried, arguing that he would not have the benefit of transcripts from the first trial. The other defendants made no objection to the severance.
 
 
 12
 Despite the appellants' protestations to the contrary, we agree with the government that the decision to sever was made sua sponte by the trial judge. The government chose the defendants for the first trial only after the court's decision to sever. In its severance order, the district court stated: "At calendar call, the Court announced its intention to separate the defendants into two groups and hold a separate trial for each group. The Court decided to split this matter into two trials because of the logistical difficulties associated with trying eleven defendants at once." The language of the district court's order and the absence of any evidence of a motion to sever by the government indicate that the motion was made sua sponte.
 
 
 13
 Federal Rule of Criminal Procedure 14 allows severance for trial when a defendant or the government may be prejudiced by joinder. Although the rule is silent as to the trial court's authority to grant a severance sua sponte, this power has been recognized. See e.g., Jackson v. United States, 412 F.2d 149, 151 (D.C. Cir.1969). The general rule is that, "[b]arring 'special circumstances' ... defendants indicted together should be tried together for the sake of judicial economy." United States v. Rusher, 966 F.2d 868, 877 (4th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 351, 121 L.Ed.2d 266 (1992). However, "[t]he grant or denial of a motion for severance ... is within the trial court's discretion and will not be overturned absent a clear abuse of that discretion." United States v. West, 877 F.2d 281, 287-88 (4th Cir.1989), cert. denied, 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989). Here, the appellants have not asserted the necessary colorable claim of prejudice that would demonstrate an abuse of discretion by the district court. Id. at 288. All five appellants' attacks on the severance action must therefore fail under either standard of review.
 
 
 14
 Turning to the several attacks on the convictions and the district court's sentencing procedures, we consider first Alvin Truesdale's contention that there was insufficient evidence to support one of his firearms convictions.
 
 III
 
 15
 In Count 11 of the indictment, Alvin Truesdale was charged with using and carrying a firearm during and in relation to a drug trafficking offense, and aiding and abetting another in the using and carrying of a firearm, in violation of 18 U.S.C. Sec. 924(c)(1) and (2). The offense underlying this Sec. 924(c) violation was conspiracy. The conspiracy doctrine makes conspirators liable for all reasonably foreseeable acts of their coconspirators done in furtherance of the conspiracy. Pinkerton v. United States, 328 U.S. 640, 646-48, 66 S.Ct. 1180, 1183-85, 90 L.Ed. 1489 (1946). In Cummings, 937 F.2d at 944-45, we held that a defendant could be convicted of a Sec. 924(c) charge predicated on conspiracy when the use of a gun by a coconspirator was reasonably foreseeable to the defendant.
 
 
 16
 Alvin Truesdale challenges the sufficiency of the evidence to support Count 11's Sec. 924(c) conviction. He contends that the only evidence on this charge was testimony by James Scales that Truesdale gave him an AK-47. There was no evidence presented that the gun was actually used or carried by Alvin Truesdale or his coconspirators during the commission of a crime.
 
 
 17
 The government argues, however, that Scales' testimony together with all other evidence introduced at trial supports the conviction. Scales and Michael Acker, Truesdale's cousin, testified that everybody in the organization had guns. When Scales was stopped by the Florida Highway Patrol, the officers found a gun provided by Truesdale. One of Truesdale's employees, Rod Williams, was involved in a shootout and used an Uzi provided by Truesdale. Truesdale arranged a drive-by shooting and gave one of his employees a .38 caliber handgun in connection with an attempt to firebomb the houses of the mothers of some of his rivals. The government contends that this evidence, viewed in the light most favorable to the government, is sufficient to support Truesdale's conviction, and we agree.
 
 IV
 
 18
 Alvin Truesdale's next contention is that even if there were sufficient evidence for a Sec. 924(c) conviction, he could have been convicted of only one Sec. 924(c) firearms violation by law because he was charged with two separate Sec. 924(c) violations during only one crime. Under Count Ten, he was convicted of knowingly using and carrying a firearm and aiding and abetting Jerome Williams in the carrying and use of a .45 caliber pistol, on or about August 16, 1988, in relation to two drug trafficking crimes (conspiracy to possess with intent to distribute and distribute cocaine, and distribution of cocaine), in violation of Sec. 924(c)(1) and (2). Under Count Eleven, he was convicted of knowingly using and carrying a firearm and aiding and abetting James Scales in the carrying and use of a Norinco AK-47, in or about December 1989, in relation to a drug trafficking crime (conspiracy to possess with intent to distribute and distribute cocaine), in violation of Sec. 924(c)(1) and (2).
 
 
 19
 Alvin Truesdale correctly notes that the Second, Fifth, Tenth, and Eleventh Circuits have held that use of more than one gun during a single drug trafficking offense will not support multiple counts under Sec. 924(c). United States v. Lindsay, 985 F.2d 666, 674 (2d.Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 103, 126 L.Ed.2d 70 (1993); United States v. Moore, 958 F.2d 310, 311 (10th Cir.1992); United States v. Hamilton, 953 F.2d 1344, 1346 (11th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 240, 121 L.Ed.2d 174 (1992); United States v. Privette, 947 F.2d 1259, 1262-63 (5th Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1279, 117 L.Ed.2d 505 (1992).
 
 
 20
 Here, however, Truesdale was charged with using and carrying a firearm in connection with a conspiracy to distribute cocaine in one count of the indictment but, in a second count, was charged with using and carrying a firearm in connection with the substantive charge of distribution of cocaine, in addition to conspiracy to distribute. We are persuaded that each firearms offense is sufficiently linked to a separate drug trafficking offense to support two separate Sec. 924(c) convictions. Truesdale's two Sec. 924(c) convictions are, therefore, affirmed.
 
 V
 
 21
 Alvin Truesdale's next contention, however, requires a contrary result. He argues that the district court erred in not dismissing his Sec. 846 conspiracy count, given that he was also convicted of running a CCE in violation of 21 U.S.C. Sec. 848. The underlying crimes used to support the CCE charge in Count One were Truesdale's violation of Sec. 841 and his participation in a drug conspiracy in violation of Sec. 846. Under Count Two, he was also convicted for the same conspiracy in violation of Sec. 846.[4] We agree that "a defendant convicted under Sec. 848 may not also be convicted for any predicate conspiracy charges proved as elements of the Sec. 848 offense. 'Congress did not intend that an individual be punished under both [Secs. 846 and 848].' " United States v. Butler, 885 F.2d 195, 202 (4th Cir.1989) (quoting United States v. Porter, 821 F.2d 968, 978 (4th Cir.1987), cert. denied, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988)). Our Butler court vacated the defendant's conspiracy convictions because the indictment had expressly referenced the conspiracy charges as predicate offenses for the Sec. 848 violation. Likewise, Alvin Truesdale's CCE conviction was based, in part, on the Sec. 846 conspiracy; therefore, the Sec. 846 conspiracy conviction must be vacated.[5] This case is accordingly remanded with instructions to the district court to vacate Alvin Truesdale's conviction on Count II of the indictment.
 
 VI
 
 22
 Truesdale's next complaint relates to Federal Rule of Criminal Procedure 32(a)(1)(A). The rule provides that the sentencing court shall "determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report...." In United States v. Miller, 849 F.2d 896, 897-98 (4th Cir.1988), we interpreted this Rule as mandating a bright-line approach:
 
 
 23
 The district court must, without exception, determine that a defendant has had the opportunity to read and discuss the presentence investigation report with his counsel. Of course the simplest and most direct way for the district court to make this determination is simply to ask the defendant, his lawyer, or both.
 
 
 24
 This is not to say that the district court must always expressly ask whether the report has been read and discussed. We recognize that often a statement by counsel or defendant will unequivocally demonstrate that the report has been read and discussed by them.... [I]n the absence of information in the record from which the district court could determine that the report had been read and discussed, the district court cannot fulfill its duties under Rule 32(a)(1)(A) without inquiring as to whether defendant had the opportunity to read and discuss the presentence investigation report with defense counsel.
 
 
 25
 The Seventh Circuit by its decision in United States v. Rone, 743 F.2d 1169 (7th Cir.1984), requires district courts to pose three questions: (1) whether the defendant had the opportunity to read the presentence report; (2) whether the defendant and his counsel have discussed the report; and (3) whether the defendant wishes to challenge any facts in the report. Id. at 1174. Alvin Truesdale argues that the sentencing judge failed to ask these questions and failed to take affirmative steps to confirm that he had read the presentence report and discussed it with his attorney.
 
 
 26
 We have not, however, adopted the Seventh Circuit's requirement that a district court pose certain specific questions, and there is no particular methodology for compliance with Rule 32(a)(1)(A) mandated in this circuit. The prosecution contends, and we agree, that Truesdale's markings such as "I surrender" on the presentence report, his objections to the findings in the presentence report, and his statements at sentencing about the trial evidence, all indicate that the requirements of Rule 32, as described in Miller, have been satisfied.
 
 VII
 
 27
 All of the appellants contend that there was insufficient evidence to sustain the district court's finding of the amounts of cocaine with which each of them could be charged in determining their base offense levels. We disagree. The appropriate offense level in a cocaine conspiracy is to be determined based upon all acts of the defendant, as well as all reasonably foreseeable acts of others in furtherance of the conspiracy. U.S.S.G. Sec. 1B1.3(a)(1). "Accordingly, in order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement and must have been reasonably foreseeable to the defendant." United States v. Gilliam, 987 F.2d 1009, 1012-13 (4th Cir.1993).
 
 
 28
 The prosecution bears the burden of proving the amount of drugs reasonably foreseeable to the defendant by a preponderance of the evidence. The government may meet this burden by: the defendant's acknowledgement that the amount alleged by the government is correct, a guilty plea to an indictment attributing an amount of drugs to the defendant, a stipulation of the parties, failure by the defendant to object to a presentence report, or presenting sufficient evidence to establish the quantity of drugs attributable to the defendant. Id. at 1013.
 
 
 29
 James Scales supplied most of the testimony concerning the amounts of cocaine involved in the conspiracy. Scales made several trips to Florida for the organization and testified as to the gross quantities of drugs that were transported from Florida to Charlotte. He testified that he made trips to Florida every other week between 1987 and 1989 and delivered between two and three kilograms of cocaine per trip to Alvin Truesdale. He also organized trips made by others and testified that the amount of cocaine returned from those trips was also two or three kilograms each. The district court calculated that about 35 trips were made, and if one kilogram were transported per trip, about 35 kilograms were brought back. Depending on whether the two or three kilogram number per trip was used, the total from the 35 trips would be between 70 and 105 kilograms; in addition, there were the putative amounts sought by the unsuccessful expeditions to Florida. We address the sentences of each of the appellants in turn.
 
 Janice McManus
 
 30
 Janice McManus' presentence report held her responsible for 5 to 15 kilograms of cocaine: a base offense level of 32. No objections to the presentence report were filed, but at the sentencing hearing, McManus' attorney adopted Alton Truesdale's attorney's "argument regarding the amount of cocaine in the organization, specifically pertaining to Ms. McManus." She also objected to the characterization of McManus as having a supervisory position in the conspiracy. She did not expressly object to the 5 to 15 amount. At sentencing, the judge held that McManus was "offense level 32, category 2, that's reasonably foreseeable amount of cocaine as being five to fifteen kilograms," and sentenced her to 144 months.
 
 Alton Truesdale
 
 31
 Alton Truesdale's presentence report indicated that 15 to 50 kilograms of cocaine were attributable to him: a base offense level of 34. The defendant objected to the presentence report and argued at sentencing that 10.25 kilograms was the maximum amount foreseeable to him. At sentencing, the district court found that 15 to 50 kilograms of cocaine was reasonably foreseeable to Alton Truesdale and sentenced him, under base offense level 36 to 216 months. The district court noted that an FBI agent had testified that Alton Truesdale was one of the main dealers of the operation, oversaw a drug house known as the Money Pit, and had knowledge of the amounts of drugs being distributed during the conspiracy.
 
 Tennison Harris
 
 32
 Tennison Harris' revised presentence report attributed 50 to 150 kilograms to him, the entire amount of cocaine allegedly involved in the conspiracy. Harris did not file objections, but did object to the amount of cocaine at the sentencing hearing. At sentencing, the district court found that Harris was in "a little bit different category" than the other defendants, "right next to [Alvin] Truesdale." The court, based on Harris' violent role in the criminal conspiracy and his close relationship with the ringleader, found that Harris could reasonably foresee 50 to 150 kilograms of cocaine. He was therefore sentenced at base offense level 36 and given 396 months in prison.
 
 Connell Robinson
 
 33
 Connell Robinson's presentence report indicated that he was responsible for 5 to 15 kilograms of cocaine: a base offense level of 32. The government objected to the presentence report, arguing that Robinson was responsible for 15 to 50 kilograms: a base offense level of 34. The defendant filed objections to the presentence report and objected at the sentencing hearing; he contends that the actual quantity involved was 500 grams to 2 kilograms: a base offense level of 26. In the wake of these objections, a probation officer reconsidered the evidence and determined that the original figure, 5 to 15 kilograms, was the most accurate. At sentencing, the court, without explicitly adopting the 15 to 50 figure, stated that Robinson was to be sentenced at base level 34 and imposed a sentence of 168 months.
 
 Alvin Truesdale
 
 34
 Alvin Truesdale, as the kingpin of the organization, was sentenced to life in prison plus 25 years. Truesdale's presentence report and all of the testimony, including that of James Scales, established that Truesdale's drug conspiracy handled 50 to 150 kilograms of cocaine.
 
 
 35
 * * * * * *
 
 
 36
 The evidence was overwhelming concerning the details of each defendant's participation in the drug conspiracy, and it was certainly sufficient to prove by a preponderance of the evidence that each of them was involved with the amount attributed to them by the district court's calculations.
 
 
 37
 The appellants all contend, however, that each of them raised specific objections to the presentence reports that were either not resolved or treated only cursorily and generally by the district court. Federal Rule of Criminal Procedure 32(c)(3)(D) provides:
 
 
 38
 If the comments of the defendant and the defendant's counsel or testimony or other information introduced by them allege any factual inaccuracy in the presentence investigation report or the summary of the report or part thereof, the court shall, as to each matter controverted, make (i) a finding as to the allegation, or (ii) a determination that no such finding is necessary because the matter controverted will not be taken into account in sentencing.
 
 
 39
 To the same effect, in Gilliam, 987 F.2d at 1013, we stated: "When the amount of drugs for which a defendant is to be held responsible is disputed, the district court must make an independent resolution of the factual issue at sentencing." See U.S.S.G. Sec. 6A1.3. The required finding of the district court may be made by the court's separate recitation of its finding as to each controverted matter or the court's express adoption of the recommended findings contained in the presentence report. United States v. Morgan, 942 F.2d 243, 245 (4th Cir.1991).
 
 
 40
 In our view, although the trial court's consideration of the objections raised by McManus, Harris, and Alton Truesdale was not extensive, the court's factual findings were minimally sufficient under the rule we announced in Gilliam and Morgan, and the judgments regarding those individuals' sentences are affirmed. The court made no findings, however, concerning the presentence report objections of Robinson and Alvin Truesdale, and although there is no doubt that these two defendants were proven to be the worst kind of drug offenders, the principles relating to sentencing are not variable. We must apply them to the worst of criminal offenders as well as to those who are guilty of lesser offenses.
 
 
 41
 Robinson, in objecting to his presentence report, stated that he could have only foreseen 500 grams to 2 kilograms of cocaine. He argues that the government's evidence was conflicting and unreliable as to this point. The only discussion by the district court was its brief remark that Robinson was "involved in a drug distribution operation and encouraged the use of violence."
 
 
 42
 Like Robinson, Alvin Truesdale raised objections as to the amount of cocaine attributed to him. He argued that the 50 to 150 kilogram amount was based not on the trial testimony of Scales, but was erroneously based upon a conversation the probation officer had with another of Truesdale's couriers. The district court made no specific finding of the amount of cocaine attributable to Alvin Truesdale, nor did it explicitly adopt the presentence report to resolve this issue.
 
 
 43
 As we have indicated, evidence of the two defendants' guilt is overwhelming. Likewise, there seems to be no doubt that the district court could have expressly and easily found that there were insufficient bases for these objections. The problem is that the court made no such findings. These circumstances seem directly controlled by our holding in Morgan, where we said:
 
 
 44
 When the district court elects to take this approach in meeting its responsibilities under Rule 32, it must make clear on the record that it has made an independent finding and that its finding coincides with the recommended finding in the presentence report....
 
 
 45
 It is apparent that the district court used the amount of cocaine base recommended in the presentence report as the amount to be attributed to Morgan. While we find no basis in the record to quarrel with the use of this amount, if the mere "imposition of a sentence obviously based on the disputed allegations in the presentence report constituted an express finding, there would be no reason for the requirement of an express finding." Here, the district court necessarily relied on a disputed factual matter in sentencing and the record does not clearly disclose that the district court made a finding as to the disputed fact. Thus, Morgan's sentence must be vacated and the case remanded for resentencing.
 
 
 46
 Morgan, 942 F.2d at 245-46 (quoting United States v. Mandell, 905 F.2d 970, 974 (6th Cir.1990) (citations omitted)). As in Morgan, the sentences of Robinson and Alvin Truesdale must be remanded for resentencing.
 
 
 47
 Upon remand, the district court must also address Alvin Truesdale's other unresolved claims. He contends that the district court committed error in using two prior sentences to calculate his criminal history category. The first "prior sentence" which Truesdale attacks was for carrying a concealed weapon. The disposition of the charge was shown on the presentence report as "Prayer for judgment continued." Truesdale argues that this continued judgment cannot count as a conviction for criminal history purposes.[6] As support for this argument, he points to the language of U.S.S.G. Sec. 4A1.2(f): "[d]iversion from the judicial process without a finding of guilt (e.g., deferred prosecution) is not counted" as a prior sentence.
 
 
 48
 The other prior conviction that Truesdale identifies as erroneously used in his criminal history computation was a conviction for assault on a law enforcement officer on October 3, 1988. He claims that this assault was part of the same scheme as the CCE charge, and therefore should not have been counted in calculating his criminal history score.[7] It is true, of course, that under Sec. 4A1.2(a)(1), "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt ... for conduct not part of the instant offense." So here, "the appropriate inquiry [must be] whether the 'prior sentence' and the present offense involve conduct that is severable into two distinct offenses. This is necessarily a fact-specific inquiry that involves more than just a consideration of the elements of the two offenses." United States v. Beddow, 957 F.2d 1330, 1338 (6th Cir.1992).
 
 
 49
 In sum, we find no error in the district court's decision to sever the appellants' trials. As to Janice McManus, Tennison Harris, and Alton Truesdale, we affirm the district court's judgment regarding these individuals' sentences. As to Connell Robinson, we affirm his conviction but remand to the district court for resentencing, with instructions to make a specific determination of the amount of cocaine attributable to Robinson. As to Alvin Truesdale, we affirm his CCE conviction and his two Sec. 924(c) firearms convictions, and remand to the district court with instructions to vacate his Sec. 846 conspiracy conviction and resentence and direct the court to make specific findings with regard to: 1) the amount of cocaine attributable to Alvin Truesdale, and 2) whether the two prior offenses were properly used to calculate his criminal history category.
 
 
 50
 AFFIRMED IN PART AND REMANDED IN PART WITH INSTRUCTIONS.
 
 
 
 [1]
 Twenty-one individuals were originally indicted. By calendar call ten had pled guilty. Six of the remaining eleven pled guilty before the trials of the five defendants who are appellants here
 
 
 [2]
 This point was conceded at oral argument
 
 
 [3]
 Appellants Alvin Truesdale, Alton Truesdale, Tennison Harris, and Janice McManus were tried in the last week of July 1992. Appellant Connell Robinson's trial occurred on October 27 and 28, 1992
 
 
 [4]
 The conduct underlying the CCE charge in Count One and the conduct underlying the conspiracy charge in Count Two was coterminous
 
 
 [5]
 As a practical matter, Truesdale's sentence will be unaffected by vacating his Sec. 846 conviction. In calculating his offense level, the Sec. 846 and Sec. 848 violations were grouped together, and the highest offense level for the most serious offense in the group, the Sec. 848 violation, was used to determine the offense level for the group. U.S.S.G. Sec. 3D1.3(a). The offense level for a Sec. 848 violation is 4 plus the offense level from Sec. 2D1.1 applicable to the underlying offense, or 38, whichever is greater. U.S.S.G. Sec. 2D1.5. Truesdale's indictment lists the predicate offenses for the Sec. 848 violation as both Sec. 841 and Sec. 846 violations; whether the underlying offense used to determine his offense level is the Sec. 841 violation or the Sec. 846 violation is immaterial, since they both have an offense level of 36. U.S.S.G. Sec. 2D1.1(c)(4). Therefore, Truesdale's exposure would have been the same (360 months to life), even without the separate conspiracy conviction
 For this reason, we are not remanding with instructions to vacate Truesdale's sentence.
 
 
 [6]
 Under U.S.S.G. Sec. 4A1.1(c), one point is given for each prior sentence not involving at least sixty days of imprisonment
 
 
 [7]
 Truesdale also argues that his assault conviction was a related case to his CCE conviction, and under Sec. 4A1.2(a)(2), prior sentences imposed in related cases are to be treated as one sentence for purposes of calculating a criminal history category under Sec. 4A1.1(c). However, " '[t]he question of related cases, referred to in Sec. 4A1.2(a)(2), applies to the relationship between prior sentences, not to the relationship between prior sentences and the present offense.' " Beddow, 957 F.2d at 1337 (quoting United States v. Walling, 936 F.2d 469, 471 (10th Cir.1991)). Therefore, this particular argument is without merit