**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 97-4433

GEORGE DOUGLAS BERROW,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
James A. Beaty, Jr., District Judge.
(CR-96-256)

Submitted: February 26, 1998

Decided: March 20, 1998

Before WIDENER and LUTTIG, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Louis C. Allen, III, Federal Public Defender, Eric D. Placke, Assistant
Federal Public Defender, Greensboro, North Carolina, for Appellant.
Walter C. Holton, Jr., United States Attorney, Michael F. Joseph,
Assistant United States Attorney, Greensboro, North Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

George Douglas Berrow pled guilty to two counts of mailing threatening communications in violation of 18 U.S.C.§ 876 (1994). He appeals his 34-month sentence, contending that the district court erred in considering that he previously shot his wife when it enhanced his sentence by six levels for conduct evidencing an intent to carry out the threats. See U.S. Sentencing Guidelines Manual § 2A6.1(b)(1) (1995). We affirm.

A short time after Berrow's wife left him, he approached her car at an intersection and shot her five times with a revolver. He also shot his son, who was in the car. Both survived. Berrow pled guilty to assault and weapons charges in state court and was sentenced to eight years imprisonment.

A year after the shooting, Berrow sent a letter to his wife at her workplace. It stated in part, "The only thing that would have made me feel better was to have you in your grave so that one day before I died I could have spit on it." In February 1996, Berrow sent a letter addressed to Brenda Martin* via her sister-in-law. It stated in part, "I want you dead kid that's the bottom line now it's up to you to figure out how to prevent that." A third letter was sent with divorce papers to Ms. Martin's attorney in April 1996. It stated in part, "When I put those five slugs into your ass, the only thing it wasn't final. . . . Your death was supposed to have made it final. . . . That's what keeps me going the hatred. Knowing that you are still out their still alive, and that it wont be long before I return to the same outside world. . . . My vows was until death do us part. See you in May 97 and you can count on that." The last letter was sent to Ms. Martin at her workplace in September 1996. It read in part:

_____

*Mrs. Berrow obtained a divorce in May 1996 and thereafter used her maiden name, Brenda Martin.

2

I told you a long time ago that the only thing that would separate us would be death. . . . [Y]ou wanted to be brave thinking that God was going to save you ass from those bullet. Well he saved you from death that time. The next time I wouldn't play around with faith again. I am ready to die and don't give a dam about life, I am supposed to be on death row right now that's the way I had it planed. . . .[I]f someone wants to get somebody their nothing you can do about it. . . . See you in hell bitch.

The government requested a sentence enhancement for conduct evidencing an intent to carry out the threat under USSG § 2A6.1(b)(1). The guideline currently provides for a six-level enhancement "[i]f the offense involved any conduct evidencing an intent to carry out such threat." USSG § 2A6.1(b)(1) (emphasis added). The commentary states that, in determining whether this specific offense characteristic should apply, the focus should be the defendant's intent and the likelihood that the defendant would carry out the threat. USSG § 2A6.1, comment. (n.1). Before USSG § 2A6.1(b)(1) was amended in 1993, it stated that the enhancement should be made "[i]f the defendant engaged in any conduct evidencing an intent to carry out such threat." (emphasis added). The purpose of the amendment was to delete "language that could be construed as a limitation on the scope of conduct for which a defendant is accountable under § 1B1.3 (Relevant Conduct) and[replace] it with language consistent with that used in other offense guidelines." USSG App. C. amd. 480 (effective Nov. 1, 1993).

At sentencing, the government argued that the shooting was relevant conduct. However, Berrow and the probation officer opposed the enhancement, arguing that the shooting was not relevant conduct and that the enhancement could only be based on conduct which was part of the instant offense. The district court determined that the prior shooting was probative of the seriousness of Berrow's intent to carry out the threats and the likelihood that he would carry them out. See USSG § 2A6.1, comment. (n.1). The court noted that in three of the letters Berrow made a direct connection between his threat and the prior shooting, and that Berrow also referred to his expected release date as his first opportunity to complete his plan of killing Ms. Martin. Consequently, the court found that a six-level enhancement was

3

warranted. Although the district court did not make a finding concerning whether the shooting was relevant conduct, it deleted three criminal history points assigned for the eight-year sentence Berrow was serving to avoid possible double counting. In finding that the prior shooting was probative of Berrow's intent to carry out his threats, the district court impliedly found that the shooting was not relevant conduct under USSG § 1B1.3. If the shooting were relevant conduct, there would be no need for a finding on whether it could be considered in determining the sentence because relevant conduct is always considered. The court also found implicitly that pre-threat conduct could be considered even after the 1993 amendment. While a more explicit ruling on the effect of the 1993 amendment would have been preferable, we find that the court's ruling was adequate to comply with the requirement that it make findings to resolve disputed issues. See United States v. McManus, 23 F.3d 878, 887 (4th Cir. 1994).

On appeal, as in the district court, Berrow argues that the 1993 amendment to USSG § 2A6.1(b)(1) precludes the district court from considering his pre-threat conduct in determining whether there was evidence that he intended to carry out the threat. Berrow relies on United States v. Sullivan, 75 F.3d 297 (7th Cir. 1996). In Sullivan, the Seventh Circuit upheld an enhancement based on pre-threat conduct but in dicta discussed at some length the effect of the 1993 amendment to USSG § 2A6.1(b)(1), opining that,"[T]he amendment was intended to broaden the scope of conduct which could be considered as grounds for the six-level enhancement. However, the new wording may also limit consideration of the defendant's own conduct to that which `the offense involved.'" Sullivan , 75 F.3d at 303.

Before the 1993 amendment to USSG § 2A6.1(b)(1), we held that pre-threat conduct could be considered in determining whether the defendant had an intent to carry out the threat. See United States v. Gary, 18 F.3d 1123, 1127-28 (4th Cir. 1994) (pivotal inquiry is defendant's intent and likelihood that he will carry out threat); accord United States v. Taylor, 88 F.3d 938, 942-43 (11th Cir. 1996); United States v. Hines, 26 F.3d 1469, 1473-74 (9th Cir. 1994); United States v. Fonner, 920 F.2d 1330, 1332 (7th Cir. 1990). But see United States v. Hornick, 942 F.2d 105, 108 (2d Cir. 1991).

Except for Sullivan, cases decided under the amended version of USSG § 2A6.1(b)(1) have upheld the enhancement based on prior

4

conduct as long as there is a direct connection between the prior conduct and the threat. See United States v. Carter , 111 F.3d 509, 513-14 (7th Cir. 1997) (history of abuse of threat victim); United States v. Barbour, 70 F.3d 580, 586-87 (11th Cir. 1995) (unsuccessful prior attempt to assassinate president), cert. denied , ___ U.S. ___, 64 U.S.L.W. 3691 (U.S. Apr. 15, 1996) (No. 95-8208). In fact, Carter cites Sullivan for the proposition that prior conduct may be considered where the threat is part of a long course of harassment. See Carter, 111 F.3d at 513.

We find that the court's ruling here was correct because Berrow's repeated references to the shooting and assurances that he intended to kill Ms. Martin when he was released from prison provided a basis for the enhancement. Under both versions of USSG§ 2A6.1(b)(1), the focus of the enhancement is the instant offense--the defendant's conduct in sending the threatening communications and the defendant's intent and ability to carry out his threats. Under either version, pre-threat conduct may be useful to shed light on the defendant's current intention. Under neither version is the enhancement given for the pre-threat conduct itself. Therefore, the district court did not err in relying on Gary to find that Berrow's pre-threat conduct could be considered to shed light on whether his offense conduct--the threatening letters--evinced an intent to carry out his threats.

We therefore affirm the sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5