**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                      No. 96-4295

ANTHONY CANNON,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                      No. 96-4307

EDWARD STEVE GIDNEY,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                      No. 96-4312

DONNELL DECOL GARDNER,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Western District of North Carolina, at Shelby.
Lacy H. Thornburg, District Judge.
(CR-95-3)

Submitted: March 17, 1998

Decided: November 18, 1998

Before NIEMEYER, LUTTIG, and MOTZ, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Robert C. Ervin, BYRD, BYRD, ERVIN, WHISNANT, McMAHON
& ERVIN, P.A., Morganton, North Carolina; Aaron P. Buda,
SCHAD, BUDA, LUCIA & COOK, L.L.C., Cincinnati, Ohio; R.
Andrew Murray, LEDFORD & MURRAY, P.C., Charlotte, North
Carolina, for Appellants. Mark T. Calloway, United States Attorney,
Deborah A. Ausburn, Assistant United States Attorney, Asheville,
North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Anthony Cannon, Edward Steve Gidney, Donnell Decol Gardner,
and numerous codefendants were charged with conspiring to possess
cocaine and crack cocaine with intent to distribute between 1992 and
1994. See 21 U.S.C. § 846 (1994). Cannon, Gidney and Gardner were
tried together and convicted. Cannon received a sentence of 324
months imprisonment, Gidney received a sentence of 84 months, and
Gardner received a sentence of 188 months. Cannon and Gardner
appeal their convictions and sentences. Gidney appeals only his sen-
tence. For the reasons explained below, we affirm Cannon's and
Gardner's convictions and the sentences imposed on all three appel-
lants.

The central figure in the conspiracy, John Oglesby, testified at
Appellants' joint trial, as did six other conspirators. Briefly summa-
rized, the government's evidence showed that in the fall of 1992,
Oglesby obtained crack from Gardner on a regular basis for several

2

months. Oglesby then found two sources in New Jersey and New York and began receiving shipments of cocaine powder by courier, some of which he sold as crack and some as powder. After that, Oglesby fronted crack and cocaine powder to Gardner. In the spring of 1993, Oglesby began storing cocaine and cash at Gidney's house. Oglesby knew Gidney through his daughter, who was Oglesby's girlfriend. Harvey Stewart sold crack for Oglesby. Cannon assisted Stewart in selling crack during the summer of 1993. On one occasion, Stewart introduced Cannon to Oglesby, and Oglesby fronted Cannon $400-$500 worth of drugs. However, Oglesby refused to deal directly with Cannon again because Cannon did not return any money to him.

I. Cannon

Cannon first contends that the district court abused its discretion in refusing to give several jury instructions he offered to support his defense that he dealt with the conspirators but was not a member of the conspiracy. Such a buyer-seller instruction need not be given when the evidence shows that the defendant's relationship with his codefendants went further than a simple buy-sell transaction. See United States v. Mills, 995 F.2d 480, 485 (4th Cir. 1993) (facts showed that defendant shared common conspiratorial purpose with conspirators); see also United States v. Dortch , 5 F.3d 1056, 1065-66 (7th Cir. 1993) (defendant's ongoing relationship with conspiracy members and receipt of drugs on credit may be evidence that he is a member of the conspiracy). Here, Cannon was the first person to volunteer information about the conspiracy to the police. He initially gave a statement in which he said he had participated in selling drugs and described Oglesby's organization. Cannon later disavowed this statement and gave another statement in which he identified Oglesby and Stewart as drug traffickers but did not admit selling any drugs himself. However, Stewart testified that Cannon sold drugs for him every day for several months, working from Stewart's house on Wilson Street in Shelby, North Carolina. Oglesby testified that, on Stewart's recommendation, he fronted drugs to Cannon.

Cannon concedes the damaging nature of Stewart's testimony to his buyer-seller defense, but argues that the requested jury instructions should have been given to inform the jury how to evaluate the evidence in the event they found Stewart's testimony not credible.

3

Because there was no clear reason why Stewart's testimony was unworthy of belief, and the evidence given by Oglesby and Stewart did not support Cannon's theory, we cannot find that the district court abused its discretion in refusing to give the buyer-seller instructions.

Next, Cannon disputes the district court's finding that he was accountable for 60 ounces of crack for sentencing purposes, which gave him a base offense level of 38 (1.5 kilograms or more of crack). See U.S. Sentencing Guidelines Manual § 2D1.1(c)(1) (1995). The government has the burden of proving, by a preponderance of the evidence, the quantity of drugs for which a defendant is held responsible at sentencing. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993). When a defendant has not admitted or stipulated to an amount of drugs and objects to the amount recommended in the presentence report, the government must meet its burden by presenting sufficient evidence at the sentencing hearing to establish the amount attributable to him. Id. The district court's determination that the government has met its burden of proof is reviewed under the clearly erroneous standard. See United States v. McDonald, 61 F.3d 248, 255 (4th Cir. 1995). We are not persuaded that the district court clearly erred in finding that the government had proved Cannon's involvement with 60 ounces (1701 grams) of crack.

The probation officer recommended that Cannon be held responsible for 60 ounces of crack on the assumption that he had sold an ounce a day for two months while working for Stewart. Cannon objected that the government had not proved that amount at trial. At the sentencing hearing, Agent John Felton of the Bureau of Alcohol, Tobacco and Firearms testified that Stewart had stated in an interview that "Cannon helped him sell for approximately two months during the summer of '93 every day between $1,300 and $5,600 packages of cocaine base with a $1,300 package being equivalent to about one ounce." From this statement, Felton estimated that Cannon sold an ounce a day for two months. While Oglesby testified that Stewart sold $3000 to $5000 worth of crack a week for him, his testimony was clearly tentative, and Oglesby himself admitted that he could be underestimating the amount of crack involved. In addition, Felton indicated at Cannon's sentencing hearing that Stewart and Cannon received additional crack from suppliers other than Oglesby. Moreover, Stewart's trial testimony suggests that Stewart and Cannon may

4

have received as much as $14,000 worth of crack each week from Oglesby, an amount that clearly exceeds seven ounces, whether an ounce of crack was worth $1300, $1400, or slightly more than $1500, as Stewart variously testified. Given that the testimony of Oglesby and Stewart was not necessarily inconsistent, and that the district court could reasonably have credited Stewart over Oglesby even if it was, we do not believe that we can find clear error here.

## II. Gidney

Gidney first contends that the district court failed to understand its authority to depart on the ground that his criminal history category overstated his past criminal conduct. See USSG § 4A1.3, p.s. While a discretionary decision against departure is not reviewable, see United States v. Bayerle, 898 F.2d 28, 31 (4th Cir. 1990), a decision not to depart based on lack of legal authority is a legal decision which we review de novo. See United States v. Hall, 977 F.2d 861, 863 (4th Cir. 1992). Gidney bases his argument on a comment made by the district court in response to Gidney's request that he be allowed to remain free on bond after sentencing. The district court replied that the law required that Gidney be confined, and commented, "[J]ust like with these sentencing guidelines, I don't have the discretion. I have to stay within that framework." Gidney mischaracterizes the court's general comment about the guidelines as a decision that it lacked the legal authority to depart under USSG § 4A1.3. That guideline explicitly affords the sentencing court the authority to depart if it finds that the defendant's criminal history has been overstated. In hearing Gidney's argument in favor of a departure and in ruling on his request, the court gave no indication that it believed it lacked authority to depart in the right circumstances. Therefore, we find this issue without merit.

Next, Gidney contends that the district court clearly erred in denying him a minimal or minor role reduction. A minimal participant is one who is "plainly among the least culpable of those involved in the conduct of a group." USSG § 3B1.2, comment. (n.1). The factors to be considered are "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others" involved. (Id.) A minor participant is one who "is less culpable than most other participants, but whose role could not be

5

described as minimal." USSG § 3B1.2, comment. (n.2). Gidney claimed that he had minimal knowledge of and involvement with the conspiracy. However, Gidney's house was one of two places where Oglesby stored drugs and money because he was afraid to keep drugs in his own house. The service Gidney rendered to Oglesby was an important one. In return, Gidney received a small amount of crack to sell. Moreover, Gidney's daughter was Oglesby's girlfriend, a fact which makes it more likely than not that Gidney knew the scope of the conspiracy. We therefore find no clear error in the court's ruling.

Gidney also maintains that the court failed to make an adequate finding concerning his role in the conspiracy. See Fed. R. Crim. P. 32(c)(1); United States v. McManus, 23 F.3d 878, 887 (4th Cir. 1994) (district court must resolve objections to presentence report); USSG § 6A1.3(b) (court shall resolve disputed sentencing factors in accordance with Rule 32(a)). Where a disputed issue remains unresolved, a remand is necessary. McManus, 23 F.3d at 887. Here, however, the court resolved the disputed issue against Gidney, though without discussion. The court thus implicitly adopted the government's arguments. We find that the court's finding complied with Rule 32 and USSG § 6A1.3(b).

Last, Gidney argues that the government failed to prove by reliable evidence that more than one kilogram of cocaine powder was stored at his house. He contends that only Oglesby's testimony was reliable enough to consider. Oglesby testified that he took ten ounces of cocaine to Gidney for storage on two occasions--a total of 567 grams of cocaine. The district court found that a base offense level of 26 (500 grams to 2 kilograms of cocaine) applied. See USSG § 2D1.1(c)(7). Because Gidney concedes his responsibility for more than 500 grams of cocaine, the calculation was necessarily correct.

III. Gardner

Gardner argues that his conspiracy conviction must be overturned because the indictment failed to charge the mens rea element of the conspiracy or the § 841 violation, i.e., that he "knowingly" conspired or "knowingly" possessed cocaine and crack with intent to distribute. The indictment charged that Gardner "did unlawfully and willfully

6

. . . conspire . . . with others . . . to unlawfully possess with intent to distribute cocaine and cocaine base, a Schedule II controlled substance, a violation of Title 21, United States Code, Section 841(a)(1), in violation of Title 21, United States Code, Section 846."*

In order to be legally sufficient, "[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." United States v. Daniels, 973 F.2d 272, 274 (4th Cir. 1992). To prove a § 846 conspiracy, the prosecution "must establish that: (1) an agreement to possess [the drugs] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became part of the conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (in banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868).

It is significant that Gardner failed to challenge the indictment in the district court. A post-verdict challenge to the sufficiency of an indictment is reviewed under a more lenient standard than a pre-verdict challenge. See United States v. Vogt, 910 F.2d 1184, 1200-01 (4th Cir. 1990). "When a post-verdict challenge to the sufficiency of an indictment is made, `every intendment is then indulged in support of . . . sufficiency.'" Id. (quoting Finn v. United States, 256 F.2d 304, 307 (4th Cir. 1958)). A challenge based on the absence of an element of the offense will be rejected if the indictment contains "words of

_____

*Section 846 states:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

Section 841(a)(1) states:

> Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally--
>
> (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance.

7

similar import." <u>Finn</u>, 256 F.2d at 306 (emphasis in original). Here, the indictment charged that Gardner acted "unlawfully and willfully." These are words of similar import to those of the statute and they served to put Gardner on notice of the charge against him. He does not allege that he was unaware of the charge facing him or that his defense was hindered by the absence of the term"knowingly." Nor could he be prosecuted for the same offense again. We therefore reject his challenge to the sufficiency of the indictment.

Finally, Gardner contests the two-level sentencing enhancement he received for possession of a firearm during the offense. <u>See</u> USSG § 2D1.1(b)(1), comment. (n.3). At sentencing, a federal agent testified that a co-conspirator, Russell Huskey, had described a shotgun with a pistol grip which Gardner carried in his car in 1993 while he was selling drugs. Gardner asserts that this information was unreliable, but made no specific showing of unreliability. Gardner testified that he did not own a firearm; however, the district court did not credit his testimony. Because the government produced evidence that Gardner possessed a shotgun during the offense, the district court did not clearly err in making the enhancement. <u>See United States v. Apple</u>, 915 F.2d 899, 914 (4th Cir. 1990) (standard of review).

For the reasons discussed, we affirm the convictions of Cannon and Gardner and the sentences imposed on Cannon, Gardner and Gidney. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

8